The State v. Paul Quinn, Appellant.—130 S. W. (2d) 511.

Division Two, July 7, 1939.

*Lawrence E. Tedrick, Byron Kearbey* and *W. L. Proffer* for appellant.

*Roy McKittrick,* Attorney General, and *Arthur O'Keefe,* Assistant Attorney General, for respondent.

LEEDY, J.—Appellant was convicted in the Circuit Court of Butler County of the crime of grand larceny. The jury assessed his punishment at a term of two years in the penitentiary, and he appeals. Error is assigned in: (1) That the information is defective; (2) that the State's main instruction is confusing and misleading; (3) the refusal of an instruction offered by appellant, which submitted the converse of the State's main instruction; (4) failure of the court to instruct on the law of alibi, whether requested or not; (5) in refusing to permit named witnesses to testify as to appellant's reputation for certain traits of character; (6) that the court coerced the jury in arriving at its verdict.

This is a companion case to State v. George Conley (Mo.), 123 S. W. (2d) 103, and State v. Claud Turner (Mo.), 123 S. W. (2d) 105. On a former trial, the jury was unable to agree upon a verdict. Appellant does not challenge the sufficiency of the evidence, so that a brief statement of the facts will suffice. At the time of the alleged offense appellant, Paul Quinn, a white man, conducted a drugstore at Poplar Bluff. A white-faced cow and a white-faced calf were the subjects of the alleged larceny. The evidence on the part of the State was to the effect that appellant arranged with three colored boys, Willie Green, George Conley and Claude (Little Babe) Turner, to go down near Neelyville, in Butler County, for the purpose of stealing the cattle in question. He also arranged with one Virgil Thompson, the owner of a truck, to transport the cattle so to be stolen. Both Willie Green and Virgil Thompson testified on the part of the State, and from their testimony it appears that appellant, in company with Thompson and the three colored boys, left Poplar Bluff late in the evening on April 12, 1937, in a Plymouth car owned by Willie Green, and drove to the farm of one J. S. Hutchison, three-quarters of a mile north of Neelyville, where there was a herd of some twenty-five or thirty cattle in Hutchison's lot; the colored boys opened the gate and drove the cattle out. Appellant and Thompson returned to Poplar Bluff for the purpose of getting trucks. They

came back to the place where they had left the colored boys and were successful in loading only one cow and calf in the Thompson truck. These were taken by Thompson over into Carter County and sold to a man named Gargac, who lived at Grandin, which was also the home of Thompson. Two or three days thereafter Quinn went to Grandin, where he and Thompson divided the proceeds arising from the sale of said cow and calf. The appellant's defense was an alibi, which was corroborated by the testimony of several witnesses.

I. The point that the information is defective for the reason it does not name the owner of the property alleged to have been stolen is not tenable, as a mere reading of the information will disclose. Moreover, Turner, Conley and Green were jointly charged in a separate information with the larceny in question. The information in their case is an exact duplicate of the one in the case at bar, except, of course, as to the name of defendant. On Conley's recent appeal (State v. Conley, supra), the information was considered and discussed at length, and held good. [See, also, State v. Turner (Mo.), supra.]

II. Appellant did not request an instruction on his defense of alibi, nor was one given by the court on its own motion. It is contended that it was the duty of the court to so instruct, whether requested or not. The authorities are to the contrary. [State v. Enochs, 339 Mo. 953, 98 S. W. (2d) 685; State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241; State v. Trice, 338 Mo. 744, 92 S. W. (2d) 135.] In the Bagby case, supra, it was said: "The court was not bound to instruct the jury upon the defense of alibi as a part of the law of the case under Section 3681, Revised Statutes 1929 (Mo. Stat. Ann., sec. 3681, p. 3227), without a request from defendant for such instruction. [State v. Parker, 301 Mo. 294, 301 (5), 256 S. W. 1040 (5); State v. Cardwell, 312 Mo. 140, 145, 279 S. W. 99, 100 (3); State v. Hadlock, 316 Mo. 1, 7, 289 S. W. 945, 947 (3); State v. McCullough, 316 Mo. 42, 48, 289 S. W. 811, 813 (3); State v. Sandoe, 316 Mo. 55, 65, 289 S. W. 890, 894 (10); State v. Wilson, 321 Mo. 564, 569 (4), 12 S. W. (2d) 445, 447 (4).] The Cardwell and Wilson cases, just cited, give as one of their reasons that alibi is an affirmative defense. In citing them, we are not to be understood as subscribing to that view. [See, 16 C. J., secs. 1004, 1588, pp. 533, 777; State v. Howell, 100 Mo. 628, 663, 14 S. W. 4, 14; State v. King, 174 Mo. 647, 655, 74 S. W. 627, 629; State v. Malone, 327 Mo. 1217, 1228, 39 S. W. (2d) 786, 790 (6).]" The point is ruled against appellant.

III. The appellant formulated and offered a correct instruction

submitting the converse of the State's main instruction, which the court refused to give. In so doing, the court fell into error. The most recent expression of this court on the subject will be found in State v. Fraley, 342 Mo. 442, 116 S. W. (2d) 17. The authorities are there collated, and analyzed. It holds that it is error to refuse a correct instruction submitting the converse of the State's main instruction, unless it is fully and fairly covered by other instructions, and this is true notwithstanding the State's main instruction concludes with the words "and unless you so find, you will acquit," or words of similar import. The case at bar falls squarely within the rule of the Fraley case. Respondent argues that the requested instruction was properly refused because covered by the instruction on reasonable doubt, which told the jury, "If, upon consideration of all the evidence, you have a reasonable doubt of defendant's guilt, you should acquit." We regard the argument as unsound because it overlooks the reasoning of the Fraley case, and those cited in it, which is that a defendant has a right to have his defense submitted to the jury in a *direct* way by instructions. The court in that connection said: "Defendants in criminal cases, if they so desire, ought in justice have the right to submit their defense to the jury in a *direct* way by instructions. If the defendant prepares such an instruction, correct in every respect, and asks that it be given, why should it be refused? What legal reason is there to deny him such an instruction? True, if the court of its own motion has given instructions fully covering the same subject matter as contained in the defendant's offered instruction, a refusal to give the offered instruction would not be error. But as was said in the Tucker case, supra, the converse clause attached to the State's main instruction 'did not fairly and fully present to the jury appellant's defense as to justify the court in refusing to give his requested Instruction A.' In civil cases defendants have the right to submit their defenses by instructions in a *direct* way. The rule should not be otherwise where life and liberty are at stake. We therefore rule that in all criminal cases, if a defendant offers a correct instruction as the converse of the State's main instruction, it should be given, unless fully and fairly covered by other instructions. We rule that the practice of concluding the State's main instruction with the following words, '. . . and unless you so find you will acquit,' or words of like import, is not a sufficient reason for refusing a correct converse instruction offered by the defendant." (l. c. 20—italics, the present writer's.) We, accordingly, hold that the court committed reversible error in refusing to give the proffered converse instruction.

IV. Complaint is made that the State's main instruction was confusing and misleading in that it required the jury to find the property alleged to have been stolen was the property of Joe Gardner,

whereas the information charged the same belonged to Joe Gardner and J. S. Hutchison. The proof showed that Hutchison had sold the cow and calf in question to Gardner on the day before the same were stolen from Hutchison's lot, so that Gardner was the sole owner thereof at the time of the larceny. It is not contended that this constituted a fatal variance between the allegations of the charge and the proof offered in support thereof, but merely that the instruction authorizing a verdict of guilt upon a finding of ownership in Gardner alone was confusing and misleading. In view of the remand made necessary for the reason set forth in the last preceding paragraph, there is no necessity for discussing this ground of complaint, as the prosecutor will doubtless cause the information to be amended by alleging ownership in Gardner alone. This is permissible under Section 3508, Revised Statutes 1929 (Sec. 3508, Mo. Stat. Ann., p. 3131), which provides: "Any . . . information may be amended in matter of form or substance at any time . . . before the trial, and on the trial as to all matters of form and variance, at the discretion of the court, when the same can be done without prejudice to the substantial rights of the defendant, on the merits. . . ."

V. Error is assigned in rejecting the accused's offer to show his general reputation for honesty and as being a law-abiding citizen. There is much confusion in the record respecting the rulings which give rise to this particular complaint, as reflected by the following excerpts, which seems to be typical:

"Q. Do you know what his general reputation in that neighborhood where you live and he lives is for being a law-abiding citizen?

Mr. Weber: We object to that question for the reason it's not in the proper form. The proper foundation hasn't been laid.

"The Court: Have you any decisions on that. I think the Supreme Court has limited it to truth and veracity.

"Mr. Tedrick: That is for the purpose of impeaching a witness, but this witness is the defendant. He's charged with theft.

"The Court: Sustained. You can prove a man's general reputation but you can't prove specific character. I will permit you to prove it but not in the manner—understand the court is permitting you to prove his general reputation for everything but is not permitting you to take it up in broken pieces.

"Mr. Tedrick: Note our exception. The defendant offers to prove by the witness . . . that he is the president of the State Bank of Poplar Bluff; has known the defendant for forty years, and has lived in the same neighborhood with him for a period of thirty years; he knows the people with whom the defendant associates; that he knows what his general reputation is among those people for honesty and being a law-abiding citizen and that said reputation is good.

"Mr. Weber: To which we renew our objection.

"The Court: I will permit them to show his general reputation if they can. I'm sustaining the object to that but I'm not excluding it now, gentlemen.

"Mr. Tedrick: We except to the ruling of the court.

"The Court: Time is too valuable to take up each little point at a time.

"Mr. Tedrick: Is your Honor allowing us to prove his general reputation, his general reputation for what?

"The Court: All right, you gentlemen are well aware of what the law is."

Wharton, in his work on Criminal Evidence (11 Ed.), Vol. 1, section 330, page 459, observes: "The well-conducted citizen, leading a decent and orderly life, is the unit of strength in the nation, and the reputation that he acquired by observance of the laws, rules and conventions of society rightly afford him a measure of protection in every crisis of life." And so we find the admissibility of evidence of good character of a defendant in a criminal prosecution is a doctrine of universal application. [Wharton's Criminal Evidence, supra; 8 R. C. L., sec. 202, p. 207; State v. Anslinger, 171 Mo. 600, 71 S. W. 1041.] But the rule is equally well-settled that character evidence must be limited to proof of the existence of the particular trait; or group of traits involved in the doing of an act like the one which is the subject of the investigation in which the evidence is offered. [Authorities, supra.] The obvious reason for excluding proof of the possession or non-possession of traits other than those involved in the crime charged is that it does not tend to enlighten a reasoning mind as to the probability of the conduct of that person. [4 Chamberlayne's Modern Law of Evidence, sec. 3288, p. 4544.]

The State concedes that honesty is one of the traits involved in the crime of larceny, here charged, but contends that because the offer included the trait or quality of law-abiding citizenship, it was properly rejected. There are no Missouri cases directly on the point. But in Pine v. State, 115 S. W. (2d) 918, 134 Tex. Cr. Rep. 396, it was expressly held to be error to refuse to permit a defendant charged with receiving and concealing stolen property to prove his reputation "as an honest, law-abiding citizen." It was there said, "This trait of character was admissible because the offense charged involved moral turpitude (citing Cockrell v. State, 95 S. W. (2d) 408, and Browder v. State, 18 S. W. 197)."

And in offenses which are deemed *mala prohibita* only, as distinguished from such offenses as larceny, the commission of which involves moral obliquity, it is held proper to prove the trait of law-abiding citizenship. In State v. Anslinger, supra, where the charge was that of fraudulent voting, it was held that the "trait of character involved in the charge, . . . was that of an honest and law-abiding citizen." And in State v. Padgett, 117 S. E. 493, 93 W. Va. 623, the charge was a violation of the prohibition laws,

wherein defendant sought to establish his good reputation as being a law-abiding citizen, and a denial of which was held to be error. The court said: "We said in State v. Moyer, 58 W. Va. 146, 52 S. E. 30, 6 Ann. Cas. 344, that evidence of previous good character is always admissible, 'but it should be confined to the trait of character at issue.' So says Greenleaf on Evidence in volume 3, section 25. It should bear some analogy and reference to the charge. It would be hard to say what particular trait of character would be brought in question in a charge of making moonshine liquor, unless it would be the general trait of obedience to law. Violations of the prohibition law are purely statutory offenses, like those relating to embezzlement. A law-abiding trait of character would tend to negative indulgence in the propensity of making moonshine liquor, and that was the pertinent and relevant nature of the inquiry attempted to be made. It is true that the inquiry might have been made more specific, by showing that he was a law-abiding citizen in respect to observance of the prohibition laws. But would not the jury make that application? Then, would he not be entitled to show that he was a law-abiding citizen, and have the benefit of his good character as such to be considered by the jury to repel the circumstances tending to convict him with the crime? It would strengthen the legal presumption of innocence. [8 R. C. L., p. 208, sec. 202; Daniels v. State, 2 Pennewell (Del.) 586, 48 Atl. 196, 54 L. R. A. 286.] We think the court should have permitted defendant to show to the jury that his reputation as a law-abiding citizen was good."

Booker v. State, 169 N. E. 588, 33 Ohio App. 338, is another liquor case. The court received evidence tending to show the general reputation of defendant as a law-abiding citizen was good, but excluded the traits of peaceableness and quietude. The latter were held to have been properly excluded. On the point here in question the court said: "There must, however, be some expression that can be employed by one accused of an offense of this kind designed to bring out the good character of the accused, and nothing occurs to us as being better adapted to that purpose than proof that he is a law-abiding citizen. That is to say, that he has a regard for the law and observes it because it is the law." [See, also, Morton v. State (Tex. Cr. Rep.), 14 S. W. (2d) 852; Sutherland v. United States, 92 Fed. (2d) 305; People v. Bridgewater, 369 Ill. 633, 17 N. E. (2d) 556; Haney v. State (Tex. Cr. Rep.), 56 S. W. (2d) 460; Griffin v. State, 162 So. 547.] We think proof of defendant's general reputation for honesty, and as being a law-abiding citizen relevant, and its rejection constituted error.

The other matters complained of are of such nature that they are not likely to recur upon another trial, and for that reason will not be discussed.

For the errors pointed out, the judgment is reversed, and the cause remanded. All concur.